```
 1  NILE LEATHAM, ESQ.
    Nevada Bar No. 002838
 2  BLAINE F. BATES, ESQ.
    Nevada Bar No. 005215
 3  KOLESAR & LEATHAM, CHTD.
    3320 West Sahara Avenue, Suite 380
 4  Las Vegas, Nevada 89102
    Telephone: (702) 362-7800
 5
    Attorneys for Debtor-in-Possession
 6    ALTA GOLD CO.
```

RECEIVED AND FILED
99 AUG -4 AM 9:06
U.S. BANKRUPTCY COURT
PATRICIA GRAY, CLERK

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

\* \* \*

| In re: | BK-N-99-31080-GWZ |
|---|---|
| ALTA GOLD CO. | Chapter 11 |
| Tax ID #87-0259249 | |
| Debtor. | DATE: OST Requested |
| | TIME: OST Requested |

## CONDITIONAL MOTION TO DISMISS CHAPTER 11 CASE

Alta Gold Co., Debtor and Debtor-in-Possession in the above-captioned case ("Debtor"), by and through its duly authorized undersigned attorneys, Kolesar & Leatham, Chtd., hereby files this Conditional Motion to Dismiss Chapter 11 Case. This motion is made and based upon the accompanying Memorandum of Points and Authorities and exhibits thereto, and the Declaration of Robert N. Pratt in support thereof.

DATED this 3rd day of August, 1999.

KOLESAR & LEATHAM, CHTD.

By: _____, for
NILE LEATHAM, ESQ.
BLAINE F. BATES, ESQ.
3320 West Sahara Avenue, #380
Las Vegas, Nevada 89102

Attorneys for **Debtor-in-Possession**
**ALTA GOLD CO.**

C:\windows\TEMP\Motion to Dismiss.doc    - 1 -    414

## POINTS AND AUTHORITIES

### I.

### FACTUAL BACKGROUND

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 14, 1999 ("Petition Date"), thereby commencing the above-captioned case. Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor continues to operate its business as a debtor in possession.

Alta is engaged in the exploration, development, mining and production of gold on properties located in Nevada. Alta also has three base metals properties in the western United States. In 1994, Alta acquired three gold properties, the Kinsley mine ("Kinsley") located in Elko County, Nevada; the Olinghouse property ("Olinghouse") located in Washoe County, Nevada; and the Griffon property ("Griffon") located in White Pine County, Nevada; and one copper property, the Copper Flat property ("Copper Flat") located in Sierra County, New Mexico. Alta completed mining at Kinsley in the first quarter of 1998; put Griffon into operation in the third quarter of 1997; put Olinghouse into operation in the third quarter of 1998, and continues the permitting process with respect to Copper Flat.

Alta is currently solely dependent upon cash flow from operations at Olinghouse and Griffon to fund operations and to repay its obligations. During 1998, Alta's operating results were negatively impacted by start-up problems at Olinghouse, as well as cost overruns caused by delays in obtaining all of the necessary permits. As a result of the start-up problems and permitting delays, gold production at Olinghouse in 1998 was less than expected and the cash cost of gold production exceeded the sale price, resulting in negative cash flow from operations at Olinghouse. As of December 31, 1998, Alta's line of credit had been drawn to its maximum amount, the majority of its accounts payable were past due, production at Olinghouse was below expectations and available cash was limited, all of which has contributed to substantial doubt about Alta's ability to continue as a going concern.

Despite continued positive cash flow from Griffon and the identification and correction of many of the start-up problems which caused Olinghouse's production shortfall, Alta has struggled to meet its production goals for Olinghouse since filing bankruptcy. These production shortfalls have seriously jeopardized Alta's ability to continue operating in bankruptcy.

Given the uncertainties in the gold production and difficulties at Olinghouse, Alta's management has aggressively pursued outside sources of capital, resulting in the execution of a Memorandum of Agreement ("MOA"), attached as **Exhibit A**. Under the MOA, Alta intends to sell a 40% interest in Olinghouse to Liberty Resources, LLC, a New Mexico limited liability company, in return for, among other things, $30,000,000 with which to pay all of its creditors in full. As a result, Alta seeks a conditional order from the Court dismissing Alta's chapter 11 bankruptcy case effective immediately, and contingent upon close of the agreement contemplated by the MOA and after payment in full of undisputed creditors' claims. Specifically, Debtor will use the proceeds of monies contemplated by the MOA to pay the Secured Lenders' (as that term has been defined in other papers on file in the Debtor's Chapter 11 case) claims in full, the unsecured trade creditors' claims in full, and cure arrearages on all leases and other secured claims. In addition, all administrative and priority claims will be paid in full. Certain contested claims will be paid after issues surrounding those claims have been resolved. Claims that are contested include the claim of Babe Mines.

Dismissal of the Debtor's case will also result in the removal of the Babe Mines Adversary Proceeding to the Nevada District Court for Washoe County, and issues related to the Babe Mines claim will be determined in that court.

Finally, the dismissal of the Debtor's case will be continent upon payment in full of all debenture holders' claims in cash.

. . . .

. . . .

. . . .

C:\windows\TEMP\Motion to Dismiss.doc            - 3 -

## II.

## LEGAL ARGUMENT

Dismissal of a chapter 11 bankruptcy case is governed by Bankruptcy Code §1112(b) which provides that on request of a party in interest, and after notice and a hearing, a bankruptcy court may dismiss a chapter 11 case for "cause." 11 U.S.C. §1112(b) (1994); *In re Whitman*, 106 B.R. 654, 657 at n.7 (Bankr. S.D. Cal. 1989); *In re Mechanical Maintenance*, 128 B.R. 382, 386 (E.D. Pa. 1991) (citing *In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir. 1990); *In re T.S.P. Indus., Inc.*, 117 B.R. 375, 376 (Bankr. N.D. Ill. 1990)) ("When ruling on a section 1112(b) motion, a court must, as a threshold matter, determine whether such 'cause' exists.").

Cause exists to allow Alta to voluntarily dismiss the pending chapter 11 case because the proposed agreement with Liberty Resources constitutes a de facto reorganization of its affairs and will result in payment in full to all creditors. "The central purpose of the Bankruptcy Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a 'new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *In re Melp, Ltd.*, 143 B.R. 890, 893 (Bankr. E.D. Mo. 1992) (citing *Grogan v. Garner*, 111 S.Ct. 654, 659 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934))). Accordingly, when a creditor successfully reorders its affairs and pays off its prepetition creditors, dismissal for "cause" is appropriate. *Melp*, 143 B.R. at 893.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

C:\windows\TEMP\Motion to Dismiss.doc        - 4 -

## CONCLUSION

For all of the foregoing reasons, Debtor in Possession Alta Gold Co. requests that the Court enter an order dismissing this case conditionally upon payment in full of all of its creditors.

DATED this 3rd day of August, 1999.

KOLESAR & LEATHAM, CHTD.

By: _____
NILE LEATHAM, ESQ.
BLAINE F. BATES, ESQ.
3320 West Sahara Avenue, #380
Las Vegas, Nevada 89102
Telephone: (702) 362-7800

Attorneys for **Debtor-in-Possession**
**ALTA GOLD CO.**

## CERTIFICATE OF SERVICE

I certify that I am an employee of Marshall Hill Cassas & de Lipkau and that on the 4th day of August, 1999, I faxed and mailed a copy of the foregoing document addressed to:

Nicholas Strozza, Esq.
300 Booth Street, Room 2129
Reno, Nevada 89509
Fax: 784-5531

Mark J. Friedman, Esq.
36 South Charles Street
Baltimore, Maryland 21201-3018
Fax: 1-410-539-0489

Michael J. Bonner, Esq.
Kummer, Kaempfer, Bonner & Renshaw
3800 Howard Hughes Parkway, Seventh Floor
Las Vegas, Nevada 89109
Fax: 1-702-796-7181

Christopher Beard, Esq.
Beard & Beard
4601 North Park Avenue
Chevy Chase, MD 20815
Fax: 1-301-951-3621

Peter A. Chapman, Esq.
24 Perdicaris Place
Trenton, NJ 08618
Fax: 1-609-392-0040

Stephen R. Harris, Esq.
Chris D. Nichols, Esq.
Belding, Harris & Petroni, Ltd.
417 W. Plumb Lane
Reno, Nevada 89509
Fax: 786-7764

Michael L. Molinaro, Esq.
Brian Swett, Esq.
Katten Muchin & Zavis
525 West Monroe Street, Suite 1600
Chicago, IL 60661-3693
Fax: 1-312-577-8931

Jennifer A. Smith, Esq.
Lionel, Sawyer & Collins
50 West Liberty Street, #1100
Reno, Nevada 89501
Fax: 788-8682

MARSHALL HILL CASSAS & de LIPKAU
333 Holcomb Ave., Suite 300
P.O. Box 2790
Reno, Nevada 89505
(775) 323-1601

| | |
|---|---|
| 1 | |
| 2 | Timothy A. Lukas, Esq.<br>Hale, Lane, Peek, Dennison, Howard and Anderson<br>P.O. Box 3237<br>Reno, Nevada 89505<br>Fax: 786-6179 |

Timothy A. Lukas, Esq.
Hale, Lane, Peek, Dennison, Howard
  and Anderson
P.O. Box 3237
Reno, Nevada 89505
Fax: 786-6179

Richard K. Thompson, Esq.
Harris, Trimmer & Thompson
6121 Lakeside Drive, Suite 260
Reno, Nevada 89511
Fax: 825-4829

William J. Frey, Deputy Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
Fax: 684-1108

Lenard E. Schwartzer, Esq.
Hale, Lane, Peek, Dennison, Howard and Anderson
Suite 800, Box 8
2300 West Sahara Avenue
Las Vegas, Nevada 89102
Fax: 1-702-365-6940

John Murtha, Esq.
Woodburn and Wedge
P.O. Box 2311
Reno, Nevada 89505
Fax: 688-3077

_/s/ Kathleen L. Morris_
Kathleen L. Morris

NILE LEATHAM, ESQ.
Nevada Bar No. 002838
BLAINE F. BATES, ESQ.
Nevada Bar No. 005215
KOLESAR & LEATHAM, CHTD.
3320 W. Sahara Avenue, Suite 380
Las Vegas, Nevada 89102
Telephone: (702) 362-7800

Attorneys for Debtor
ALTA GOLD CO.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA
* * *

| In re: | BK-N-99-31080 GWZ |
|---|---|
| ALTA GOLD CO., | Chapter 11 |
| Tax ID #87-0259249 | Hearing Date: OST Requested |
| Debtor. | Hearing Time: OST Requested |

### DECLARATION OF ROBERT N. PRATT IN SUPPORT OF CONDITIONAL MOTION TO DISMISS CHAPTER 11 CASE

ROBERT N. PRATT, under penalty of perjury, declares:

1. I am a citizen of the United States of America and a resident and domiciliary of White Pine County, State of Nevada. I am of full legal age and competence, and make this Declaration upon my personal knowledge, except with respect to matters expressly stated upon information and belief, and as to the latter, I verify the same to be true.

2. I am the duly nominated, appointed and elected Chairman of the Board of Directors, President and Chief Executive Officer of Alta Gold Co., a Nevada corporation, Debtor in the above-captioned proceedings (hereinafter "Alta").

3. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 14, 1999 ("Petition Date"), thereby commencing the above-captioned case. Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor continues to operate its business as a debtor-in-possession.

-1-

C:\windows\TEMP\Motion to Dismiss-Pratt Decl.doc

4. Alta is engaged in the exploration, development, mining and production of gold on properties located in Nevada. Alta also has three base metals properties in the western United States. In 1994, Alta acquired three gold properties, the Kinsley mine ("Kinsley") located in Elko County, Nevada; the Olinghouse property ("Olinghouse") located in Washoe County, Nevada; and the Griffon property ("Griffon") located in White Pine County, Nevada; and one copper property, the Copper Flat property ("Copper Flat") located in Sierra County, New Mexico. Alta completed mining at Kinsley in the first quarter of 1998; put Griffon into operation in the third quarter of 1997; put Olinghouse into operation in the third quarter of 1998, and continues the permitting process with respect to Copper Flat.

5. Alta is currently solely dependent upon cash flow from operations at Olinghouse and Griffon to fund operations and to repay its obligations. During 1998, Alta's operating results were negatively impacted by start-up problems at Olinghouse, as well as cost overruns caused by delays in obtaining all of the necessary permits. As a result of the start-up problems and permitting delays, gold production at Olinghouse in 1998 was less than expected and the cash cost of gold production exceeded the sale price, resulting in negative cash flow from operations at Olinghouse. As of December 31, 1998, Alta's line of credit had been drawn to its maximum amount, the majority of its accounts payable were past due, production at Olinghouse was below expectations and available cash was limited, all of which has contributed to substantial doubt about Alta's ability to continue as a going concern.

6. Despite continued positive cash flow from Griffon and the identification and correction of many of the start-up problems which caused Olinghouse's production shortfall, Alta has struggled to meet its production goals for Olinghouse since filing bankruptcy. These production shortfalls have seriously jeopardized Alta's ability to continue operating in bankruptcy.

7. Given the uncertainties in the gold production and difficulties at Olinghouse, Alta's management has aggressively pursued outside sources of capital, resulting in the execution of a Memorandum of Agreement ("MOA"), attached as **Exhibit A**. Under the MOA, Alta intends to sell a 40% interest in Olinghouse to Liberty Resources, LLC, a New

-2-

1 Mexico limited liability company, in return for, among other things, $30,000,000 with which
2 to pay all of its creditors in full. As a result, Alta seeks a conditional order from the court
3 dismissing Alta's chapter 11 bankruptcy case effective immediately, and contingent upon
4 close of the agreement contemplated by the MOA and after payment in full of undisputed
5 creditors' claims. Specifically, Debtor will use the proceeds of monies contemplated by the
6 MOA to pay the Secured Lenders' (as that term is defined in other papers on file in the
7 Debtor's Chapter 11 case) claims in full, the unsecured trade creditors' claims in full, and
8 cure arrearages on all leases and other secured claims. In addition, all administrative and
9 priority claims will be paid in full. Certain contested claims will be paid after issues
10 surrounding those claims have been resolved. Claims that are contested include the claim of
11 Babe Mines.

12     8. Dismissal of the Debtor's case will also result in the removal of the Babe Mines
13 Adversary Proceeding to the Nevada District Court for Washoe County, and issues related to
14 the Babe Mines claim will be determined in that court

15     9. Finally, the dismissal of the Debtor's case will be continent upon payment in full
16 of all debenture holders' claims in cash.

17 DATED this 3rd day of August, 1999.

ROBERT N. PRATT

KOLESAR & LEATHAM, CHTD.
3320 West Sahara Avenue, Suite 380
Las Vegas, Nevada 89102
Telephone: (702) 362-7800 / Facsimile: (702) 362-9472

G:\4168.001\pldgs\Motion to Dismiss-Pratt Decl.doc

-3-

Case 99-31080-gwz    Doc 414    Entered 08/04/99 15:51:00    Page 11 of 18

## MEMORANDUM OF AGREEMENT

WHEREAS Alta Gold Co., a publicly held junior mining company, is currently operating under the protection of Chapter 11 of the bankruptcy laws of the United States of America pending reorganization; and

WHEREAS said Alta Gold Co. requires approximately $10,000,000 in order to pay its obligations and consequently obtain a discharge from the Court having jurisdiction so as to reestablish its operations, seek reinstatement of its listing with NASDAQ and implement its development and production operations for the benefit of its shareholders; and

WHEREAS Liberty Resources, L.L.C., a New Mexico limited liability company whose sole member is Victor di Suvero, has reviewed and evaluated a number of the assets and operating capabilities of Alta Gold Co.; and

WHEREAS Liberty is in a position to generate a substantial amount of financing to assist Alta in its reorganization and development programs;

NOW THEREFORE the Parties hereto agree as follows:

1) Liberty has negotiated a loan of $50,000,000 to be made to it and obtained a commitment therefor from American Trading Center and World Alliances Corp., a copy of which is attached hereto and made a part hereof as Exhibit A. This loan requires that clear title to the Olinghouse mining property be placed in and held by U.S. Bank in Reno, Nevada for the benefit of the lender in case of default, and in the event the loan will have been paid timely to have the title return to Alta.

2) The loan proceeds are to be allocated as follows:

— $30,000,000 to Alta as the payment on Liberty's purchase of a 40% interest in Alta's operations at the Olinghouse mining property in Nevada.

— $10,000,000 to the Capital Fund for the investment programs mentioned immediately above.

— $1,500,000 as the Loan Fee due American Trade Center & World Alliances, Corp.

— $1,000,000 as the Loan Fee due Kico Holdings, Inc. and Associates and any third parties claiming through them.

— $3,000,000 Interest Reserve to be deposited in U.S. Bank in Reno to cover loan interest costs on the base loan for the first six months of the credit arrangements.

— $1,000,000 to reimburse Liberty for development costs incurred in the structuring of the transaction.

— $1,500,000 as an Operating and Management Reserve for Liberty's use.

Alta/Liberty Memorandum of Agreement
August 2, 1999
Page 1 of 3

— $1,500,000 as an Operating Capital Reserve to be used by Liberty to defray additional operating costs that may be incurred by Alta in its operations during the first six months either as the basis of a leveraged credit program to be established by Liberty for Alta's benefit or as an additional payment on account of Liberty's purchase obligations.

— $500,000 as a Legal and Closing Cost Reserve. The total loan proceeds, aggregating $50,000,000, are to be treated as a borrowing by and for the benefit of Liberty, and are to be secured by the assignment of all of Alta's right, title and interest in its Olinghouse mining property as well as by the assignment of Liberty's 40% carried interest in the Olinghouse mining property and by assignment by Liberty of its interest in the Operating Agreement for the property executed by Alta which will call for a minimum payment of $600,000 per month commencing six months from the date of closing of the initial loan and purchase transactions and to extend for no more than 30 months thereafter.

3) As partial consideration to induce Liberty to enter into the agreements outlined above, Alta will grant an unconditional option to Liberty to purchase 1,500,000 shares of its common stock at a price of $1.00 per share to Liberty with the right to exercise this option at any time after six months from the date of the initial closing.

4) In order to implement the transaction and to finalize the initial $50,000,000 loan transaction Alta will be required to advance $10,000 to American as the initial loan fee deposit required by American within 24 hours of receipt by Alta of an extension by the Bankruptcy Court of no less than 10 business days, to permit American and all others concerned to complete the documentation required to implement the loan as described in the July 29th Commitment by American.

5) The parties hereto agree to use their best efforts to prepare and complete the documentation required to complete the transaction outlined above in a timely manner and to provide each other and the lending agency and/or its associates with the assistance that may reasonably be required to implement the transaction including but not limited to the establishment of the appropriate escrow arrangements at U.S. Bank in Reno, Nevada, appropriate title opinions, operating and profit participation agreements as well as all corporate resolutions authorizing and implementing the transaction and any and all other such documentation that may be reasonably required to close the initial $50,000,000 loan transaction.

6) All documentation required to implement the transactions contemplated by virtue of this Agreement is to be submitted to the Parties for the approval of counsel, which will not be unreasonably withheld.

7) Time is of the essence of this agreement and each of the Parties hereto undertakes to use its best efforts to facilitate the completion of the documentation required for the closing of the proposed $50,000,000 loan on or before September 3, 1999 with the understanding that should the closing of the loan not occur on or before the close of business on Friday September 3, 1999, this Agreement will be of no further force and effect unless extended by mutual agreement of the Parties.

8) Each of the Parties affixing their signatures hereto warrants that he is fully authorized to execute the subject agreement and any and all ancillary agreements that may be required to implement said agreement.

Alta/Liberty Memorandum of Agreement
August 2, 1999
Page 2 of 3

IN WITNESS WHEREOF the Parties hereto have entered this agreement on this 2nd day of August, 1999.

LIBERTY RESOURCES, L.L.C.

_____
Victor di Suvero, Chairman, President & CEO

ALTA GOLD CO.

_____
Robert N. Pratt, Chairman, President & CEO

Alta/Liberty Memorandum of Agreement
August 2, 1999
Page 3 of 3

VdS     RNP

AUG-02-1999  12:24                                                          P.03



# American Trade Center & World Alliances Corp.

HEADQUARTERS:  67 WALL STREET, 24th FL, SUITE 2411, NEW YORK, N.Y. 10005, U.S.A.
PHONE         (212) 804-5732, FAX (212) 681-4302, TELEX 283814 BERLIN
PHONE: FINANCE & BANKING DIVISION        (212) 480-6241, (212) 370-4792
                                         (212) 370-4805
REAL ESTATE DIVISION                     (212) 370-3809

July 29, 1999

Victor di Suvero, President
Liberty Resources, LLC
P.O. Box 734
Tesuque, NM 87574
(Via Fax No. 505-982-2622)

Dear Mr. di Suvero,

**Partial Financing ($50 Million Dollars) of the Olinghouse Mining Project**

Pursuant to our meeting and our review of the data and documentation submitted by you with reference to your request for partial financing of the above project, we hereby inform you of our undertaking to fund an initial increment of $50 Million Dollars subject to final terms and conditions that will be established by American Trade Center and World Alliances Corp. in writing and specified in the final contract and will be subject to mutually satisfactory documentation.

**LENDER:** American Trade Center and World Alliances Corp.

**BORROWER:** Victor di Suvero, President, Liberty Resources, LLC.

**LOAN AMOUNT:** U.S. $ 50 Million

**SECURITY:** ~~Second~~ *FIRST* mortgage on the title of the Olinghouse Mining Project.

**LOAN TERM:** 15 years. Payments are calculated based on an amortization of 15 years.

**INTEREST RATE:** 12 % fixed.

**PREPAYMENT PENALTY:** None.

**LOAN FEE:** 3 %

AUG-02-1999  11:43                                                        P.04

- Page two (2) of two (2) -

The Loan Fee is non-refundable and will be paid on the Loan Closing Date.

This undertaking is also subject to your ability to deliver clear title of the Olinghouse Mining Project to the Trust Department of the U.S. Bank in Reno concurrently with our disbursement of the funds indicated.

It is a condition of our undertaking that Alta Gold company will be fully operational and no longer bound by its Chapter 11 restrictions.

We will be ready, willing and able to close on our funding within five days of our acceptance of the documentation required to implement our transaction. Given our discussions and your representations I would expect that we would be able to complete the transaction on or before August 10, 1999.

We look forward to working with you to bring this transaction to a successful conclusion.

Sincerely yours,

Margaret Peter
Vice President, Finance Division.



# American Trade Center & World Alliances Corp.

**HEADQUARTERS:** 67 WALL STREET, 24th FL., SUITE 2011, NEW YORK, N.Y. 10005, U.S.A.
**PHONE:** (212) 804 5768,  FAX: (212) 891 4368,  TELEX: 253614 [illegible]
**PHONE:** FINANCE & BANKING DIVISION: (212) 943 [illegible], (212) 370 4793
(212) 370 4895

Merchant Banking & International Corporate Finance

Innovative Capital Solutions

### CORPORATE CHARTER, MISSION & PHILOSOPHY

ATC & World Alliances Corp. (ATC) was chartered for the purpose of providing innovative and individualized financing and financial management advisory services to domestic and international companies. Many of our client companies have specialized needs which are not readily addressed through the limited traditional service offerings of most commercial lending institutions and investment banking houses. ATC is responsive to the practical requirements of companies requiring loans, credit lines, debt and equity financing, emerging growth companies, corporations in the process of engineering financial turnarounds or reorganizations, lower middle-market enterprises (i.e., with annual sales of U.S. $ 300,000 to U.S. $ 100 million), mature firms in distressed industries, and international companies with complex or combined funding requirements.

For larger loans between U.S. $ 100 million and above ATC serves as a lending as well as a funding entity using innovative financial engineering, investment banking and innovative project funding, for which it operates with several governmental and United Nations representatives and affiliates, as well as with top management of major and well established European and U.S. Banks especially in private sector, job-creation and humanitarian projects.

ATC serves as a direct lender or equity investor, a syndicate participant, a placement agent, an advisor, or an administrator, or in some combination of roles, depending upon the specific circumstances and requirements in each case. ATC's network of correspondents and syndicate participants includes a host of industrial finance companies, factoring firms, insurance companies, trade finance houses, foreign banks, investment bankers, pension funds and private venture capitalists. Regardless of the nature of our participation, ATC prides itself on our relationship-centered focus.

### COMPENSATION

ATC's compensation structure typically entails some combination of investment banking or brokerage fees plus an equity participation in the form of stock, stock

**REPRESENTATIVE OFFICE:** UNITED NATIONS HEADQ., 3rd Fl., NEW YORK, N.Y. 10017
• HONG KONG • SINGAPORE •

- Page two (2) -

purchase options, or warrants. This arrangement, in addition to being compassionate and mindful of some clients' limited liquidity, allows each client to maintain complete corporate control while affording ATC an opportunity to participate in corporate growth.

### EXPERTISE

ATC's Managing Directors, Associate Directors and Advisory Committee Members represent a combined total of more than a century's experience in a diversity of subspecialties within the field of finance, encompassing debt and equity finance, investment syndication; real estate finance; asset-based lending; corporate mergers and acquisitions; international trade finance; asset management and international financial planning; factoring; leasing; consumer financing; project financing; corporate turnarounds and takeovers; Chapter 11 restructurings; investor relations; financial public relations; securities trading and brokerage; foreign exchange; offshore financing, insurance and credit enhancement.

Some of the client industries addressed by ATC's Directors and Advisors in their numerous respective engagements have included real estate development, consumer and commercial products and services, telecommunications, computers, industrial chemicals, import/export manufacturing, publishing, entertainment, petroleum, shipping, avionics, printing, foods and food service, automotive sales and finance, franchising and many others.

### OUR CLIENT MARKET

Clients come from varied industries, from low-tech manufacturing and distribution companies to high-technology and unique service businesses, but they can generally be separated into several key categories:
- Real Estate companies that are in the process of acquiring more property, financing, re-financing or construction loans for development.
- Established companies which have been "orphaned" by their banks due to poor financial results, excessive leverage, unpopular industries and ownership changes;
- Undervalued or nominally publicly-traded companies with inadequate market and investor support, or which seek liquidity.
- Companies involved with overseas suppliers or customers where letters of credit, trade financing, special types of insurance or credit enhancement are required;
- Rapidly growing companies whose demand for inventory and purchase order financing are outpacing bank credit line availability;
- Corporations wishing to make strategic acquisitions, public or private companies.

REPRESENTATIVE OFFICE:   UNITED NATIONS HEADQ., 3rd FL., NEW YORK, N.Y. 10017
                         * HONG KONG *  SINGAPORE *